THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH THOMAS, JR., <br><br> Plaintiff, <br><br> v. <br><br> CORRECTIONS OFFICER HOPF, <br><br> Defendant. | CASE NO. C19-1766-JCC <br><br> ORDER |

This matter comes before the Court on United States Magistrate Judge Michelle Peterson's Report and Recommendation ("R&R") recommending that that the Court dismiss Mr. Thomas's complaint without prejudice for failure to exhaust administrative remedies (Dkt. No. 41). Having thoroughly considered the R&R, Plaintiff's objections, Defendant's response, and the relevant record, the Court finds oral argument unnecessary and hereby REJECTS the R&R, DENIES Defendant's motion for summary judgment, and RECOMMITS the matter to Magistrate Judge Peterson for further proceedings for the reasons explained herein.

I.      BACKGROUND

Plaintiff Kenneth Thomas, Jr. seeks $50,000 in damages for pain and suffering he experienced after falling at the Snohomish County Jail. (Dkt. No. 10 at 6.) Mr. Thomas alleges that he was entitled to sleep on a bottom bunk because of previous neck and back injuries, but on October 19, 2019, Defendant Corrections Officer Rodney Hopf placed another inmate in his cell

who also needed to use the bottom bunk and "forced" Mr. Thomas to use the top bunk. (*Id.* at 4–5.) The cell was not equipped with a ladder, so Mr. Thomas climbed on a stack of chairs to reach the top bunk. (*Id.*) He fell and his "slip disc went out." (*Id.*) Mr. Thomas requested medical care, but Officer Hopf told medical personnel he was faking, and then they laughed at him and refused to provide him pain medication for "a couple weeks." (*Id.*)

Officer Hopf moved for summary judgment, arguing that the Court should dismiss Mr. Thomas's claim without prejudice because he did not attempt to resolve it through the Jail's internal grievance process before filing this lawsuit. (Dkt. No. 19.) Magistrate Judge Peterson recommends that the Court grant the motion. (Dkt. No. 41.)

## II.     DISCUSSION

The Court "may accept, reject, or modify" a magistrate judge's report and recommendation on a prisoner's petition challenging conditions of confinement or the court may "recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

Magistrate Judge Peterson recommends the Court grant summary judgment for Officer Hopf because there is no genuine dispute that Mr. Thomas failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Mr. Thomas does not dispute that he failed to exhaust administrative remedies, but objects to Magistrate Judge Peterson's conclusion that there is no genuine dispute that the Jail's grievance system was "available" to him within the meaning of the PLRA.[1] (*See* Dkt. No. 42.)

---

[1] Even construed liberally, most of Mr. Thomas's objections are not sufficiently specific to *require* the Court to review Magistrate Judge Peterson's R&R *de novo*. *See United States v. Midgette*, 478 F.3d 616, 621–22 (4th Cir. 2007) (holding that courts need not consider objections that are not sufficiently specific, such as "generalized objection[s]" that purport "to cover all issues addressed by the magistrate judge"). The only specific "objections" Mr. Thomas raises are new factual allegations that were not presented to Judge Peterson. (*See* Dkt. No. 42 at 8–9 ("Mr. Thomas never received a[n] inmate orientation handbook upon booking.") and 4, 8 ("most people, including [Mr. Thomas] [are] to[o] high on drugs and alcohol" to read the handbook). The Court declines to consider these new facts. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (Courts need not "consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."). Although the Court is not *required* to

ORDER
C19-1766-JCC
PAGE - 2

A.    **Exhaustion Under the Prison Litigation Reform Act**

Before filing a lawsuit "about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), an inmate must first exhaust the "administrative remedies [that] are available" at his or her institution, 42 U.S.C. § 1997e(a). An administrative process is available if it is "capable of use." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). The Supreme Court has identified three circumstances in which "an administrative remedy, although officially on the books, is not capable of use:" (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when it is "so opaque that it becomes, practically speaking, incapable of use," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

"Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). Courts within the Ninth Circuit analyzing exhaustion apply a burden-shifting framework. At the first stage, the defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. "Once the defendant has carried that burden, . . . the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

The R&R correctly concludes that there is no genuine dispute that Mr. Thomas failed to exhaust administrative remedies. But, viewing the evidence in the light most favorable to Mr. Thomas, Officer Hopf failed to carry his initial burden to prove that Snohomish County Jail's administrative remedy was "available." Therefore, the Court REJECTS the R&R and DENIES Defendant's motion for summary judgment.

//

---

review the R&R *de novo*, it exercises its discretion to do so. *See* 28 U.S.C. § 636(b)(1).

**B.     Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). When analyzing whether there is a genuine dispute of material fact, the "court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

**C.     Defendant's Motion for Summary Judgment**

Officer Hopf supported his motion for summary judgment with two declarations. The first, from Kimberly Parker, states that the Inmate Orientation Handbook details the procedure for filing grievances, Mr. Thomas received a copy of the handbook, and Mr. Thomas never filed a grievance. (Dkt. No. 20 at 1–2.) Ms. Parker also provided a copy of the handbook. (Dkt. No. 20-1.) The second declaration is from Officer Hopf. It too states that the handbook "details the procedures for filing grievances," Mr. Thomas received a copy of the handbook, and Officer Hopf never received a grievance from Mr. Thomas. (Dkt. No. 21 at 1–2.)

In response, Mr. Thomas argued that "the Inmate Orientation Handbook provides no instruction on how to access the jail's grievance procedure" and every time he "asked a prison guard how to file a grievance, [he] was always told they did not know, or they would find out but

never returned to answer [him] or provide guidance." (Dkt. No. 37 at 1, 3.)

The Court agrees that the handbook does not explain how to file a grievance. The relevant portion consists of seven bullet points, only two of which could reasonably be characterized as instructions. (*See* Dkt. No. 20-1 at 20.) The first explains that inmates must "attempt to resolve problems with staff prior to filing a grievance" and must document their attempts "on the grievance form." (*Id.*) The second sets forth the circumstances under which an inmate may appeal a grievance decision. (*Id.*) Although the handbook refers to grievance forms, it does not explain where inmates can obtain those forms or how to submit them. Therefore, the handbook alone does not establish that administrative remedies were generally "available" to inmates. *See Albino*, 747 F.3d at 1174–76 (holding that defendants failed to meet initial burden of showing available administrative remedy when they presented evidence describing a grievance procedure but no evidence showing that inmates were told how to use that procedure).

Perhaps recognizing this deficiency, Officer Hopf submitted a new declaration from Captain Alonzo Downing with his reply brief that explains that an inmate may obtain a grievance form by "request[ing] one from the deputy working in the module in which the inmate is housed," which is the same process for requesting "kite" forms.[2] (Dkt. No. 39 at 1–2.) The declaration further states that Mr. Thomas has requested and submitted kite forms in the past, so it is "unlikely Mr. Thomas is unfamiliar with the process for how to file grievances." (*Id.* at 2.)

The Court may not consider Captain Downing's declaration, which was submitted for the first time with Officer Hopf's reply brief, because Mr. Thomas was not provided an opportunity to respond to it. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("We agree with the Seventh Circuit, which held that '[w]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond.'") (quoting *Black v. TIC Inv. Corp.,* 900 F.2d 112, 116

---

[2] The handbook defines a "kite" as a document "used to communicate with staff, to request specific needs or to participate in available programs." (Dkt. No. 20-1 at 7.)

ORDER
C19-1766-JCC
PAGE - 5

(7th Cir. 1990)). Indeed, the *Rand*/*Wyatt* notice Officer Hopf provided to Mr. Thomas expressly informed Mr. Thomas that he was "not entitled to file anything further in response" to Officer Hopf's reply brief. (Dkt. No. 22 at 2.)

But even if the Court could consider the new declaration, it does not show that inmates *were told* that the process for obtaining and submitting a grievance form is the same as the process for obtaining and submitting a kite form. The section of the handbook explaining how to obtain and submit kite forms (which is several pages away from the grievance section) never mentions grievance forms. (Dkt. No. 20-1 at 7.) Nor does the grievance section mention kite forms. (*Id.* at 20.) Therefore, even if Captain Downing's declaration were properly in the record (and it is not), it would not satisfy Officer Hopf's initial burden to show that the grievance procedure was generally available. *See Albino*, 747 F.3d at 1174–76.

On the present record, Officer Hopf has failed to meet his initial burden to show that there is no genuine dispute that Snohomish County Jail's grievance procedure was available to inmates. Therefore, the Court must deny his motion for summary judgment.

## III. CONCLUSION

For the foregoing reasons, the Court REJECTS the R&R, DENIES Defendant's motion for summary judgment (Dkt. No. 19), and RECOMMITS this matter to Magistrate Judge Peterson for further proceedings. The Court expresses no opinion on whether Judge Peterson should permit another round of summary judgment briefing, hold an evidentiary hearing to decide "disputed factual questions relevant to exhaustion," *Albino*, 747 F.3d at 1170, or proceed in another fashion.

DATED this 29th day of January 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE