UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH THOMAS, JR.,

    Plaintiff,

v.

CORRECTIONS OFFICER HOPF, *et al.*,

    Defendants.

Case No. C19-1766-JCC-MLP

REPORT AND RECOMMENDATION

## I.     INTRODUCTION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Kenneth Thomas, Jr. ("Plaintiff"), proceeding *pro se*, filed an amended complaint alleging a violation of his Fourteenth Amendment due process rights during his pretrial incarceration at the Snohomish County Jail ("SCJ") in October 2019. (Am. Compl. (Dkt. # 10) at 4-5.) On April 21, 2021, Defendant Rodney Hopf ("Officer Hopf") filed a motion for summary judgment ("Defendant's Motion"), arguing Plaintiff's claim fails as a matter of law. (Def.'s Mot. (Dkt. # 65) at 1-2.)

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Defendant's Motion (dkt. # 65) be GRANTED and that Plaintiff's claim be DISMISSED with prejudice.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

### A. Procedural History

On December 6, 2019, Plaintiff submitted a proposed complaint naming "Corrections Officer Hopf," Snohomish County Jail Medical Staff, and Snohomish County Corrections. (Compl. (Dkt. # 6).) This Court declined to serve Plaintiff's initial complaint due to deficiencies and granted Plaintiff leave to amend. (Dkt. # 7.) On January 6, 2020, Plaintiff submitted an amended complaint naming only "Corrections Officer Hopf." (Am. Compl. at 1.) On January 8, 2020, this Court directed service of Plaintiff's amended complaint. (Dkt. # 11.)

On March 6, 2020, Officer Hopf answered Plaintiff's amended complaint. (Answer (Dkt. # 16).) On April 16, 2020, Officer Hopf filed his first summary judgment motion arguing Plaintiff failed to exhaust his administrative remedies. (Def.'s Mot. (Dkt. # 19).) On June 2, 2020, and on August 3, 2020, this Court granted Plaintiff extensions of time to respond, ultimately allowing Plaintiff until September 14, 2020. (Dkt ## 31, 36.) On October 21, 2020, the undersigned recommended this matter be dismissed without prejudice. (R. & R. (Dkt. # 41).) On January 29, 2021, the Honorable John C. Coughenour rejected this Court's recommendation and recommitted the matter to the undersigned. (Dkt. # 44.)

On February 22, 2021, this Court lifted a previous stay of discovery, granted Officer Hopf's request to file a second summary judgment motion, and imposed new discovery and dispositive motions deadlines. (Dkt. # 48.) On April 21, 2021, Officer Hopf submitted his second summary judgment motion. (Def.'s Mot. (Dkt. # 65).) On April 29, 2021, Plaintiff filed his response (Pl.'s Resp. (dkt. # 72)), and on May 12, 2021, Officer Hopf filed his reply (Def.'s Reply (dkt. # 73)). This matter is now ripe for the Court's consideration.

B.     **Factual Background**

On October 10, 2019, Plaintiff pleaded guilty to charges of: (1) Attempted Second Degree Burglary; (2) Taking Motor Vehicle Without Permission in the Second Degree; and (3) Possession of Controlled Substance arising out of Snohomish County.[1] (Duncan Decl. (Dkt. # 69), Exs. A-C.) While awaiting his sentencing hearing, Plaintiff was confined in the F3 module at the SCJ. (*Id.*)

On October 19, 2019, Officer Hopf was responsible for inmates in the F3 module and facilitating bunk assignments. (First Hopf Decl. (Dkt. # 66) at ¶¶ 3-4, Ex. B at 12-13.) As part of his responsibilities, Officer Hopf was required to shift inmates between cells to ensure inmates had appropriate bunks based on the tier level of their cell in the module and their bunk status. (*Id.* at ¶ 4.) That evening, Officer Hopf conducted tier checks of the F3 module at 7:00 p.m. and 7:25 p.m. (*Id.* at ¶ 5.) Plaintiff did not speak to Officer Hopf or attempt to get his attention during either tier check. (*Id.*)

Shortly after 8 p.m., Officer Hopf heard a crashing noise and responded to Plaintiff's cell after Plaintiff's cellmate pressed the emergency button. (First Hopf Decl. at ¶ 6.) When Officer Hopf arrived, he observed Plaintiff laying on the floor. (*Id.*) Plaintiff notified Officer Hopf he was a lower bunk status inmate and that he had attempted to climb into the upper bunk when he slipped and fell.[2] (*Id.* at ¶ 7.) Plaintiff informed Officer Hopf his cellmate also required a lower

---

[1] On April 2, 2021, Plaintiff's conviction for Possession of a Controlled Substance was vacated as a result of the Washington Supreme Court's decision in *State v. Blake*, 197 Wash.2d 170 (2021). (Duncan Decl. (Dkt. # 69), Ex. D.)

[2] Per his declaration, Officer Hopf notes upper bunks are accessible by a step mounted to a wall as ladders are not provided by SCJ because they can present safety and security concerns. (First Hopf Decl. at ¶ 4.) In his response, Plaintiff submitted exhibited photo evidence of his cell that he alleges demonstrates he was required to use a stack of chairs rather than a step on the wall. (Pl.'s Resp. at 1-2, 26, Ex. A at 4-6.) The photographs Plaintiff attached to his response appear to show a step mounted to the wall near the lower bunk. (*See* Pl.'s Resp., Ex. A at 5-6.)

REPORT AND RECOMMENDATION - 3

bunk, which prompted him to attempt to get into the upper bunk. (*Id.*) Officer Hopf notified SCJ medical staff. (*Id.* at ¶ 6.)

As SCJ medical staff assessed Plaintiff, Officer Hopf determined he had inadvertently moved Plaintiff's previous cellmate, instead of Plaintiff, as he was making moves to accommodate new lower bunk status inmates. (First Hopf Decl. at ¶ 8.) Plaintiff intended to address the bunk issue during an upcoming recreation time. (*See* Pl.'s Resp. at 10; Hopf Decl., Ex. C at 17; *see also* Second Hopf Decl. at ¶ 2.) However, Plaintiff alleges he did not attempt to contact Officer Hopf or another SCJ official sooner because Officer Hopf allegedly threatened him not to contact him, or use the emergency button, for any reason and because Officer Hopf had previously directed racial slurs toward him, which Officer Hopf disputes. (Pl.'s Resp. at 2, 10-12, 27; Second Hopf Decl. (Dkt. # 74) at ¶¶ 2, 7.)

SCJ medical staff evaluated Plaintiff and determined he did not require further medical attention or a need to be transferred to another medical facility. (Bellinger Decl. (Dkt. # 68) at ¶ 7, Ex. A; First Hopf Decl. at ¶ 10.) Plaintiff was observed to be alert and oriented, in no acute distress, with no bruising or redness noted on his back.[3] (Bellinger Decl. at ¶ 7, Ex. A at 29.) Medical staff instructed Officer Hopf to get ice for Plaintiff and to change his status to lower bunk/lower-tier status. (First Hopf Decl. at ¶ 10.) Plaintiff was previously prescribed and received naproxen for his pain. (Bellinger Decl. at ¶ 8, Ex. A at 12-14, 19-23.) Plaintiff did not request any additional medical aid for his back injury or any other type of pain medication outside of his prescribed naproxen. (*Id.* at ¶ 9, Ex. A at 26-27; Second Hopf Decl. at ¶¶ 3, 6.)

---

[3] Plaintiff maintains he has a history of chronic back issues. (Am. Compl. at 5; Pl.'s Resp. at 13, Ex. C. at 15.) However, Officer Hopf argues Plaintiff had previously represented he had no medical problems prohibiting him from standing for long periods of time or lifting when seeking employment as an inmate worker at SCJ. (Bellinger Decl. (Dkt. # 68) at ¶ 6, Ex. B at 31.) At that time, Plaintiff presented with full range of motion and was cleared to be in SCJ's inmate work program. (*Id.*)

REPORT AND RECOMMENDATION - 4

Based on the incident, Officer Hopf infracted Plaintiff for not asking for permission before moving bunks. (First Hopf Decl. at ¶ 10, Ex. B at 12-13, Ex. C at 16-18; Def.'s Resp. at 23.) Plaintiff was later transferred to the F2 module based on a concern for his safety as other inmates were upset that they were not allowed out of their cells during normal recreation time because of the incident. (First Hopf Decl. at ¶ 10, Ex. B at 12; Second Hopf Decl. at ¶ 4; Lee Decl. (Dkt. # 67) at ¶ 4.) Plaintiff did not have any noticeable injury as he was transferred to the F2 module or any noted issue walking. (First Hopf Decl. at ¶ 10; Lee Decl. at ¶ 4.)

On October 22, 2019, Plaintiff was found not guilty of a rule violation for "unauthorized area and manipulation" but was found guilty for his use of profanity toward Officer Hopf, with no sanction or reprimand given. (Hopf Decl., Ex. C at 17-18.) At the hearing, Plaintiff noted he had planned to speak with Officer Hopf at recreation time about the bunk issue. (*Id.* at 17.)

### C.     Plaintiff's Claim

Plaintiff alleges Officer Hopf violated his Fourteenth Amendment rights when he placed another inmate in his cell who required a lower bunk despite Plaintiff's medical requirements for a lower bunk due to his prior back and neck injuries. (Am. Compl. at 4-5.) As a result, Plaintiff alleges he had to use a stack of three chairs to reach the upper bunk, fell down to the ground, and injured his back. (*Id.* at 5.) Plaintiff alleges Officer Hopf laughed at Plaintiff after the incident, said he was "faking it," and that he was refused pain medication for a couple of weeks after the incident. (*Id.*) Plaintiff requests $50,000.00 for pain and suffering. (*Id.* at 6.)

## III.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

REPORT AND RECOMMENDATION - 5

1  Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is
2  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient
3  showing on an essential element of his case with respect to which he has the burden of proof.
4  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden
5  of showing the Court "that there is an absence of evidence to support the nonmoving party's
6  case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence
7  that negates an essential element of the nonmovant's case or by establishing that the nonmovant
8  lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins.*
9  *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the
10 nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*
11 *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in
12 favor of the nonmoving party. *Id.* at 585-87.

13         Genuine disputes are those for which the evidence is such that a "reasonable jury could
14 return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must
15 present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford*
16 *Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla
17 of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary
18 judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). In addition,
19 it is the nonmoving party's responsibility to "identify with reasonable particularity the evidence
20 that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted
21 source omitted). The Court need not "scour the record in search of a genuine issue of triable
22 fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider
23 only the cited materials, but it may consider other materials in the record.").

REPORT AND RECOMMENDATION - 6

A verified complaint, such as Plaintiff's, "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004). But allegations that are based merely on Plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

### B. Section 1983 Claims

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of his rights protected by the Constitution or created by federal statute; and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act he was legally required to do that caused the deprivation complained of. *Id.* (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### IV. DISCUSSION

Officer Hopf argues he did not violate Plaintiff's constitutional rights under the Eighth or Fourteenth Amendment because he did not intend to move the wrong inmate and because he was

not deliberately indifferent to Plaintiff's medical needs.[4] (Def.'s Mot. (Dkt. # 65) at 12-22.) Because Plaintiff was no longer a pretrial detainee after he pleaded guilty to his charges arising out of Snohomish County (Duncan Decl., Exs. A-C), the Eighth Amendment—and not the Fourteenth Amendment—is implicated. *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) (citations omitted) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."); *see also Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990). In this case, the Court concludes there are no genuine issues of material fact regarding Plaintiff's claim and Plaintiff fails to establish a violation of his rights under the Eighth Amendment.

      A.      **Cruel and Unusual Punishment**

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conditions of confinement that involve the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). A prisoner claiming an Eighth Amendment violation based on conditions of confinement "must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The deliberate indifference standard involves an objective and a subjective prong. First,

---

[4] In addition, Officer Hopf further argues that even if he did violate Plaintiff's Eighth or Fourteenth Amendment rights, he is entitled to qualified immunity because the rights at issue were not clearly established. (Def.'s Mot. at 22-23.) Because the Court concludes Officer Hopf did not violate Plaintiff's constitutional rights in the first instance, it need not address his argument that the rights at issue were not clearly established for qualified immunity purposes.

REPORT AND RECOMMENDATION - 8

1  the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at
2  834. Second, the prison official must "know of and disregard an excessive risk to inmate health
3  or safety." *Id.* at 837. Therefore, "a prison official may be held liable under the Eighth
4  Amendment for denying humane conditions of confinement only if he knows that inmates face a
5  substantial risk of harm and disregards that risk by failing to take reasonable measures to abate
6  it." *Id.* at 835.

7  Here, Plaintiff fails to establish he suffered a sufficiently serious deprivation nor
8  demonstrates that Officer Hopf was deliberately indifferent to his safety. Though Officer Hopf
9  made a mistaken bunk assignment, such inadvertent conduct does not rise to the level of
10 deliberate indifference. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("In
11 determining deliberate indifference, we scrutinize the particular facts and look for substantial
12 indifference in the individual case, indicating more than mere negligence or isolated occurrences
13 of neglect."); *see also Roberts v. Khounphixay*, 2018 WL 8060581, at *6 (W.D. Wash. Nov. 15,
14 2018). Nevertheless, Officer Hopf's error in bunk assignments did not directly result in
15 Plaintiff's injury. Plaintiff himself elected to climb a stack of chairs to the upper bunk voluntarily
16 rather than seek assistance to remedy the mistaken bunk assignment. (*See* Pl.'s Resp. at 10; Pl.'s
17 Objections (Dkt. # 42) ("I tryed (sic) to climb up to the top bunk against my better judgment and
18 fell to the floor."); *see also* Second Hopf Decl. at ¶ 2.) It is also clear from the record that Officer
19 Hopf contacted SCJ medical staff immediately after observing Plaintiff on the floor. (First Hopf
20 Decl. at ¶¶ 6-7.) The record fails to demonstrate Officer Hopf was aware of any risk to Plaintiff's
21 health or safety based on Plaintiff's previous back injuries, and therefore, Officer Hopf could not
22 have disregarded a known risk to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 837.
23

REPORT AND RECOMMENDATION - 9

In his response, Plaintiff alleges he was prevented from seeking assistance based on Officer Hopf's alleged prior mistreatment. (*See* Pl.'s Resp. at 10-12, 27.) However, Plaintiff has admitted throughout this case that he intended to address the issue at recreation time with Officer Hopf. (*See* Hopf Decl., Ex. C at 17 ("[Plaintiff] said he planned to speak to the Deputy about it at rec time."); *see also* Compl. at 6; Pl.'s Resp. at 10.) Furthermore, the record does not evince Plaintiff was impeded from seeking assistance from another SCJ official.

The Court concludes Officer Hopf's placement of two lower bunk status inmates in the same cell was not a "sufficiently serious" deprivation, nor did it place Plaintiff at an excessive risk to his health or safety, for the demonstration of an Eighth Amendment violation. Plaintiff's claim on this basis should be denied.

**B.     Right to Adequate Medical Care**

To establish an Eighth Amendment violation related to medical care, an inmate must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *see also Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010). Prison officials may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citations and internal quotation marks omitted). However, a prison official may be held liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

A serious medical need exists if the failure to treat an inmate's condition "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th

REPORT AND RECOMMENDATION - 10

Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)). However, the inmate must show harm resulting from the delay. *Id.*

Here, the undisputed facts demonstrate Plaintiff's alleged back injury was appropriately managed. As previously noted, Officer Hopf immediately requested SCJ medical staff after Plaintiff fell, and SCJ medical staff promptly treated and assessed Plaintiff's back injury. (*See* First Hopf Decl. at ¶¶ 6, 10; Bellinger Decl. at ¶ 7, Ex. A.) Based off the SCJ medical staff's assessment, Plaintiff did not suffer any significant injury from the fall. (*See* Bellinger Decl. at ¶ 7, Ex. A at 29.) It is also clear from the record Plaintiff did not follow up with SCJ medical staff in a manner indicative of a serious back injury and that he did not request any additional pain medications outside of the naproxen he was prescribed and administered. (*See* Bellinger Decl. at ¶¶ 8-9, Ex. A at 26-27; Second Hopf Decl. at ¶¶ 3, 6.)

Due to the absence of a serious medical need, Plaintiff fails to demonstrate he sustained a substantial risk of serious harm necessary to maintain a deliberate indifference claim under the Eighth Amendment. At most, it appears Plaintiff is dissatisfied with the course of treatment he was provided. *See Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (finding a difference of opinion between an inmate and medical authorities regarding proper medical treatment does not give rise to a § 1983 claim) (citation omitted)). Therefore, Plaintiff's claim on this basis should be denied.

**C.   Harassment**

Finally, Plaintiff's allegations that Officer Hopf treated him disrespectfully are not actionable under the Eighth Amendment. (*See* Am. Compl. at 5.) Allegations of verbal harassment or abuse do not state a constitutional deprivation under § 1983. *See Keenan*, 83 F.3d at 1092 (finding "disrespectful and assaultive comments" by prison guard not enough to

implicate Eighth Amendment); *see also Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (finding prison officials' abusive language towards Muslim inmates insufficient to establish equal protection violation). Therefore, any alleged conduct relating to Officer Hopf's laughing, snickering, or alleged comments that Plaintiff was "faking it" fails to rise to the level of a constitutional violation under the Eighth Amendment.[5]

Accordingly, the Court recommends granting summary judgment to Officer Hopf and that Plaintiff's claim be denied.

### V.   CONCLUSION

For the foregoing reasons, this Court recommends Defendant's Motion (dkt. # 65) be GRANTED, and that this matter be DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than

---

[5] Plaintiff's response also appears to argue Officer Hopf's treatment of him was racially motivated. (*See* Pl.'s Resp. at 2, 10-12, 27.) Plaintiff's amended complaint failed to include such allegations nor did Plaintiff attempt to plead a claim regarding any alleged racial animus or bias. (*See* Am. Compl. at 4-5.) As such, the Court declines to consider any additional claims that were not originally presented in Plaintiff's amended complaint. *See* Fed. R. Civ. P. 8(a); *Pickern v. Pier 1 Imports, Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (citation and internal quotation marks omitted).

**fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 25, 2021**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable John C. Coughenour.

Dated this 4th day of June, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13